UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re: | ) Bankr. No. 09-50082 |
| | ) Chapter 7 |
| THEODORE WOLK | ) |
| dba TED WOLK APARTMENTS | ) |
| SSN/ITIN xxx-xx-3869 | ) Adv. No. 09-05010 |
| Debtor, | ) |
| | ) |
| JOHN S. LOVALD, TRUSTEE | ) |
| Plaintiff, | ) PLAINTIFF'S PRE-TRIAL BRIEF |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| KATHRYN M. TENNYSON, | ) |
| PENNINGTON COUNTY, | ) |
| ABN AMRO MORTGAGE GROUP, | ) |
| INC., | ) |
| GREAT WESTERN BANK | ) |
| Defendants. | ) |

## STATEMENT OF MATERIAL FACTS

A)    Defendant Kathryn M. Tennyson's ("Tennyson") Amended Answer and
Counterclaim in this adversary proceeding (doc. 29) admits the following material facts:

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. §
157(a), and the Order of General Reference, dated July 27, 1984, entered by the United
States District Court, District of South Dakota. This is a core proceeding pursuant to 11
U.S.C. § 157(b).

2.    This is an adversary proceeding governed by Part VII of the Federal Rules
of Bankruptcy Procedure. This matter arises under 11 U.S.C. § 363(h) and Federal
Rule of Bankruptcy Procedure 7001(3).

3.    Debtor filed a voluntary Chapter 7 bankruptcy on March 10, 2009. (doc. 1)

4.    Plaintiff is the Trustee appointed to administer Debtor's case. (doc. 6)

5.    At Schedule A – Real Property, Debtor disclosed that he co-owns with his
wife, 219 Berry Boulevard, Rapid City, South Dakota 57702. (doc. 2) This property is
legally described as follows:

> "Lot F and the Northerly Forty Feet (N40') of Lot E of the Replat of Lots Five (5), Six (6), Nine (9), Ten (10) and Thirteen (13) of Lot H of Berry Pines Subdivision in the City of Rapid City, Pennington County, South Dakota" ("Property")

6.   At Schedule A – Real Property, Debtor estimated the value of the Property at $219,000.00 and the debt encumbering the property at $121,700.00.

7.   At question 4 of the Statement of Financial Affairs, Debtor disclosed that he and his wife, Defendant Tennyson, are getting a divorce.  (doc.1)

8.   Debtor and Defendant Tennyson own the Property as tenants in common.

9.   Defendant Pennington County South Dakota has a lien against the Property for real estate taxes.  Pennington Title Company disclosed the lien as follows:

> "2008 Real Estate Taxes in the Amount of $3,817.10 (I.D. #20245); The First Half are Paid; The Second Half in the Amount of $1,908.55 are Due and Payable, But Not Delinquent Until November 1, 2009."

10.   Defendant ABN AMRO Mortgage Group, Inc. has a mortgage against the Property.  Pennington County Title Company disclosed that lien as follows:

> "Mortgage Dated May 28, 2003, Executed by Kathryn M. Tennyson, a Single Person, to ABN AMRO Mortgage Group, Inc. to Secure the Payment of $109,100.00 plus Interest, Filed May 29, 2003, and Recorded in Book 116 of Mortgages on Page(s) 4762 in the Office of the Register of Deeds, Pennington County, South Dakota."

11.   At Schedule D – Debtor disclosed a mortgage debt of $99,700.00.  (doc. 1)

12.   Defendant Great Western Bank has a mortgage against the Property. Pennington County Title Company disclosed this lien as follows:

> "Collateral Real Estate Mortgage Dated April 12, 2004, Executed by Theodore S. Wolk and Kathryn M. Wolk, Husband and Wife, to Great Western Bank to Secure the Amounts not to exceed $25,000.00 plus Interest, Filed April 20, 2004 and Recorded in Book 130 of Mortgages on Page(s) 4090; Addendum Dated May 1, 2009, Filed May 8, 2009, and Recorded in Book 189 of Mortgages on Page(s) 2164 in the Office of the Register of Deeds, Pennington County, South Dakota."

13.   At Schedule D – Debtor disclosed a mortgage debt of $22,087.00.  (doc. 1)

14.   The Property is a single family residence.

15.   The first condition that must be met for the Trustee to sell the Property is that partition between the Debtor and Defendant Tennyson is impracticable. Other courts have held that where property is a single family residence there is no practicable manner partition other than a sale and division of the proceeds. In re:  Addario 53 B.R. 335, 338 (Bkrtcy. Mass., 1985) citing In re Ivey 10 B.R. 230 (Bankr N.D. Ga. 1981)

16.   The fourth condition is satisfied as the property is not used for utility purposes.

B)   Tennyson admitted the following material facts in her responses to Trustee's Request for Admissions (doc. 34)

17.   Attached and marked Exhibit "A" is a true and correct copy of the Warranty Deed that Debtor and Defendant Tennyson received for 219 Berry Boulevard.

18.   Defendant initialed the crossing out of "as joint tenants with rights of survivorship and not" on Exhibit "A".

19.   Attached as Exhibit "B" is a true and correct copy of an Agreement signed by Debtor and Defendant Tennyson dated May 30, 2003.

C)   Tennyson admitted the following material fact in her Response to Plaintiff's Interrogatories (First Set) at Interrogatory 2.  (doc. 21)

20.   Tennyson knows of no facts that the bankruptcy estate would realize more from selling Debtor's interest alone in 219 Berry Boulevard, Rapid City, South Dakota 57702 as compared to selling Debtor's and Tennyson's interest together.

D)   Tennyson admitted the following material facts in her Response to Plaintiff's Interrogatories (Second Set) (doc. 35)

21.   On or about October 21, 2009, Tennyson had John L Haeder, MAI, State Certified General Appraiser appraise the Property and he opined a value of $197,000.00 See Interrogatory Response 1 Exhibit "C"

22.   The 2009 assessed value for the Property is $192,100.00. (doc. 35) See Defendant Kathryn M. Tennyson's Response to Plaintiff's Interrogatories to Defendant Tennyson (Second Set) Exhibit 3, page 2.

3

23. On June 7, 2010, Daryl Washechek State Certified Appraiser valued the Property at $191,000.00 for the Trustee.

24. The 2010 assessed value for the Property is $198,700.00

25. Tennyson's father passed away since the commencement of the divorce with Debtor. See Defendant's Response to Plaintiff's Interrogatories (First Set) Response 3.

26. This is Tennyson's third acrimonious divorce. See Debtor's Response to the Motion to Lift Stay of Kathryn Tennyson-Wolk (doc. 37, page 6, paragraph 6).

27. Tennyson has suffered from clinical depression since 1984. See Interrogatory Response 5, referencing Exhibit 11.

28. Tennyson has been gainfully employed for 40 plus years and as a single person accumulated $39,000.00 in retirement in addition to her equity in the Property. In addition Tennyson helped Debtor with his rental properties, getting them ready for sale. See Defendant's Response to Plaintiff's Interrogatories (First Set)

E)    Chronology

29. May 27, 2003, (Tuesday) Debtor gifts Tennyson $45,000.00 so purchase of Property could close on time before their wedding reception at the Property.

30. May 28, 2003, (Wednesday) date of closing on Property.

31. May 29, 2003, (Thursday) date of marriage at Property.

32. May 30, 2003, (Friday) signed marital agreement that Property will be held as tenants in common.

33. October 2007, Debtor and Tennyson separated.

34. March 6, 2008, date divorce commenced.

35. March 10, 2009, date Debtor filed Chapter 7.

Analysis of the Relevant Law

A   PROPERTY OF THE ESTATE

Debtor's one-half interest in the Property as a tenant in common is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). In South Dakota one

4

of the three ways that several people may own property is through a tenancy in common. S.D.C.L. 43-2-11. The South Dakota Supreme Court has held that legal title to real property is prima facie evidence of actual ownership. Bachand v. Walker 455 N.E.2d. 851, 855 (S.D. 1999) By virtue of the Warranty Deed Debtor held legal title to one-half of the Property on the petition date.

## B HOMESTEAD EXEMPTION

When Debtor filed bankruptcy he claimed a homestead exemption in 2918 Tomahawk Drive, Rapid City, South Dakota. (doc. 1 page 15) Tennyson, Debtor's wife, did not file bankruptcy with him. Debtor and Tennyson are still husband and wife. At paragraph 6 of Tennyson's Amended Answer she argues that she is entitled to a homestead exemption in the Property. This is contrary to South Dakota law. In the case of Beck v. Lapsley 593 N.W.2d 410, 413 (S.D. 1999) a husband and wife may claim only one homestead and only one homestead may be claimed on behalf of the family.

## C SIGNED BUT DID NOT READ

Tennyson attempts to avoid the consequences of documents that she signed by claiming she didn't read the document before she signed it. See Defendant's Responses to Plaintiff's Interrogatories (First Set) Response No. 3 doc. 21; Defendant Kathryn M. Tennyson's Response to Plaintiff's Request for Admissions Responses 2 and 3; and Defendant Kathryn M. Tennyson's Responses to Plaintiff's Interrogatories to Defendant Tennyson (Second Set) Response No. 8. In the case of Holzer v. Dakota Speedway, Inc. 610 N.W.2d 787, 797 the South Dakota Supreme Court held:

> "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts."

This Court should not allow Tennyson to deny her agreements based on the defense she did not read the agreements before she signed them.

5

## D  363(h)

The Trustee's Complaint is based upon 11 U.S.C. § 363(h).  This statute provides:

> "Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –
>
> > 1) partition in kind of such property among the estate co-owners is impracticable;
> > 2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owner;
> > 3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the the detriment, if any, to such co-owner; and
> > 4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power."

Subsections 1, 2, and 4 are not at issue.  In determining whether the benefit to the estate outweighs the detriment to Tennyson, the Court must consider both economic and noneconomic factors.  In re:  Persky 893 F2d 15, 20 (2d Cir. 1989) Once the Trustee makes a "prima facie" case demonstrating that the estate would benefit from the sale of the Property, the burden shifts to Tennyson to show facts indicating why the sale should not be approved.  In re:  Grabowski 137 B.R. 1, 3 (S.D.N.Y.), aff'd 970 F2d 896 (2d Cir. 1992) There is a benefit to the estate when secured and priority liens and administrative expenses are paid from the proposed sale.  For there to be a benefit to the estate it is not necessary that unsecured creditors receive any payment.  In re:  Bell 80 B.R. 104, 106 (M.D.Tenn 1987) The test for Tennyson requires her to demonstrate that the detriment to her exceeds the inconvenience ordinarily attendant in having to change one's residence or live in an adequate but more modest abode.  In re:  Roswick 231 B.R. 843, 854 (Bkrtcy. S.D.N.Y. 1999)

6

The Code provides Tennyson certain protections. For example Tennyson has the right to purchase the Property at the Trustee's proposed sale price. 11 U.S.C. § 363(i). If Tennyson does not purchase the Property from Trustee, she is entitled to a percentage of the sale proceeds according to her interest. 11 U.S.C. § 363(j)

The Trustee's appraiser has valued the Property at $191,000.00. This amount is consistent with Tennyson's appraisal and the assessor's valuation. It is the Trustee's understanding that the real estate taxes are current. The debt against the property is approximately $121,000.00. This leaves equity of approximately $70,000.00. The estate would be entitled to one half of the equity. Consequently, there is a benefit to the estate of $35,000.00 less the estates share of expenses. This amount is not small and not speculative. In re: Sessions 2009 W.L. 5943244 "Discussion" (Bankr. D. Colo.)

Tennyson claims she is entitled to recoup payments she has made on the mortgage. Tennyson cites no legal authority for her argument. The current house payment is $1,132.00. Tennyson claims rentals in the area are approximately $1,000.00 to $1,400.00. See Defendant Kathryn M. Tennyson's Response to Plaintiff's Interrogatories to Defendant Tennyson (Second Set) Responses 4 and 5. Tennyson has to pay living expenses whenever she lives. The comparable cost of the mortgage and renting is a wash. Tennyson received $29,000.00 of equity from the sale of her previous house. Tennyson applied this amount as a down payment on the Property. Id. Despite doing no maintenance on the house for seven years she will receive approximately the same amount back from the Trustee's sale of the Property.

Tennyson wants the Court to believe that her current clinical depression is caused by the Trustee's desire to sell her one half interest in the Property. Her interrogatory answers are certainly melodramatic. But the fact of the matter is that Tennyson has been treated for clinical depression for 26 years. By her own admission she is depressed because she is going through her third acrimonious divorce and she has recently lost her father. Moreover, her depression has not prevented her from working for 40 years or entering into 3 marriages.

7

E  Counterclaim paragraph 14

At paragraph 14 of her Counterclaim Tennyson alleges that: "Debtor's interest in the real estate arose through fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act. (doc. 29) For the Court to impose a trust under SDCL 55-1-8, the evidence must be clear and convincing. Rosebud Sioux Tribe v. Strain 432 N.W.2d 259, 264 (S.D. 1988) Trustee sent Interrogatories to Tennyson on these claims the following are her responses:

Interrogatory 9.
Identify all facts known by you that Debtor's interest in 219 Berry Boulevard arose through accident.
Response 9.
See response to Interrogatory 10, below.

Interrogatory 10.
Identify all facts known by you that Debtor's interest in 219 Berry Boulevard arose through mistake.
Response 10.
I believe the deed was supposed to be in my name only as that's what Ted told me since the loan was in my name only.  Whoever prepared the deed must have received improper instructions.

Interrogatory 11.
Identify all facts known by you that Debtor's interest in 219 Berry Boulevard arose through undue influence.
Response 11.
See above.

Interrogatory 12.
Identify all facts known by you that Debtor's interest in 219 Berry Boulevard arose through violation of a trust.
Response 12.
The house was supposed to be put in my name in accordance with the gift from Ted of $45,000.00.  To the extent that did not happen and that was engineered by (sic)

Interrogatory 13.
Identify all facts known by you that Debtor's interest in 219 Berry Boulevard arose through a wrongful act.
Response 13.
Ted told me the loan and the house would be solely in my name.  If he is responsible for how the deed was prepared then he lied to me.

8

See Defendant Kathryn M. Tennyson's Response to Plaintiff's Interrogatories to Defendant Tennyson (Second Set) (doc. 35) The Warranty Deed to the property was prepared by Joseph R. Lux. The Sellers signed the Warranty Deed on May 20, 2003. On the date of closing, May 28, 2003, Tennyson initialed a cross out in the Warranty Deed making her and Debtor tenants in common. On May 30, 2003, Tennyson and Debtor signed a marital agreement that they would own the Property as tenants in common. The facts as alleged by Tennyson are not clear and convincing evidence that there was fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act in connection with the Warranty Deed to the Property.

### F  IMPLIED OR CONSTRUCTIVE TRUST

Tennyson alleges she is entitled to an implied or constructive trust on the bankruptcy estate's interest in the Property. "The statute of limitations in cases of an implied or constructive trust begins to run from the time the act was done by which the party become charged as Trustee." Johnson v. Graff 23 N.W.2d 166, 168 (S.D. 1946) Debtor acquired her interest as tenant in common on May 28, 2003. Tennyson first asserted her claim of implied or constructive trust on December 10, 2009. (Amended Answer - doc. 22). Tennyson's claim of constructive trust is barred by the six year statute of limitations contained in SDCL 15-2-13(1), (2), (4), or (6) Meyer v. Kneip 457 N.W.2d 463, 466-467 (S.D. 1990)

### G  HOME INSPECTORS

Home Inspectors are licensed and governed by the rules of the South Dakota Real Estate Commission. SDCL 20:74:06:05 provides in part:

"General Exclusions and limitations. The following general exclusions apply to home inspectors:
   The inspector is not required to report on:
      1) The market value of the property or its marketability
      2) The advisability or inadvisability of purchase of the Property;"

9

WHEREFORE Plaintiff prays that the Court grant him permission to sell the property free and clear of liens and ownership interests pursuant to 11 U.S.C. § 363(h) with all valid liens and interests to attach to the proceeds of the sale and for such other and further relief that is just and equitable under the circumstances.

Dated:  June 17, 2010

DOUGHERTY & DOUGHERTY, LLP

/s/  Patrick T. Dougherty
Patrick T. Dougherty
PO Box 2376
Sioux Falls, SD  57101-2376
(605) 335-8586  (605) 331-2519 (Fax)
pat@ptdlawfirm.com
Attorney for Plaintiff

10