UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 09-50082 |
| | ) | Chapter 7 |
| THEODORE STEPHEN WOLK | ) | |
| dba Ted Wolk Apartments | ) | |
| SSN/ITIN xxx-xx-3869 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN S. LOVALD, TRUSTEE | ) | Adv. No. 09-5010 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | |
| | ) | DECISION FOLLOWING REMAND |
| KATHRYN M. TENNYSON; | ) | |
| PENNINGTON COUNTY; | ) | |
| ABN AMRO MORTGAGE GROUP, INC.; | ) | |
| and GREAT WESTERN BANK | ) | |
| | ) | |
| Defendants. | ) | |

Following remand from the Bankruptcy Appellate Panel for the Eighth Circuit, this decision and the accompanying order and judgment constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2). As set forth below, a judgment will be entered declaring Trustee-Plaintiff John S. Lovald may not sell, under 11 U.S.C. § 363(b) and (h), the real property that is the subject of his complaint.

I.

The findings of fact entered on the record June 24, 2010 are adopted and incorporated by reference herein.[1] As the Court suggested in its letter to counsel

---

[1] Following remand, neither Trustee-Plaintiff John S. Lovald nor Defendant Kathryn M. Tennyson sought to supplement the record.

(doc. 65) that accompanied its scheduling order (doc. 66), the issues presented on remand are:  (1) the impact, if any, of Trustee-Plaintiff John S. Lovald's status under 11 U.S.C. § 544(a) on the bankruptcy estate's interest in Defendant Kathryn M. Tennyson's home, taking into account both South Dakota law and Debtor Theodore Stephen Wolk ("Debtor") and Tennyson's recorded tenancy in common in Tennyson's home; (2) whether the bankruptcy estate's resulting interest in Tennyson's home is broader than the bankruptcy estate's interest in Tennyson's home under 11 U.S.C. § 541(a)(1), which was considered at trial; and (3) if the bankruptcy estate's resulting interest in Tennyson's home under § 544(a) *is* broader, whether Trustee Lovald may sell Tennyson's home under 11 U.S.C. § 363(b)(1) and (h)(3).

In his brief following remand (doc. 67), Trustee Lovald argues because the warranty deed does not indicate the proportionate share of Tennyson's home owned by Debtor and Tennyson,

> the law presumes they took in equal shares.  This presumption is rebuttable, however, by a showing of unequal contribution.  Such a showing raises a new presumption that the grantees intended to share in proportion to their contribution. *Cudmore v. Cudmore*[,] 311 N.W.2d 47, 49 (S.D. 1981)[.]  However[,] as to purchases and encumbrances[,] tenants in common hold in accordance with the recorded title[,] and the presumption that they hold in equal shares is not rebuttable. *Id*[.] at 50. Since a bankruptcy trustee stands in the shoes of a judicial lien creditor and a bona fide purchaser[,] it follows then that under federal bankruptcy law and state law that [*sic*] Trustee and Tennyson own the House in equal shares and that [*sic*] the Trustee's share is property of the bankruptcy estate.

On this issue, Tennyson, citing a handful of cases, says in her brief (doc. 71), "[a] prospective purchaser can never expect a recorded co-tenancy to be a 50/50 interest

when the co-tenants are married and the non-conveying co-tenant is occupying the

property as a homestead."  She further argues her possession of the house put any

purchaser on constructive notice of all her rights in the property.   Neither party

discussed in detail the possible differences in the application of § 544(a)(1) and (a)(3)

under South Dakota law.

II.

Section 544(a)(1) and (3) of title 11 provide:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

While the trustee's powers under § 544(a) are created by the federal code, state law

defines the status of a judicial lienholder or a *bona fide* purchaser.  *Williams v. Marlar*

(*In re Marlar*), 252 B.R. 743, 752 (B.A.P. 8th Cir. 2000); *Krigel v. Mercedes-Benz*

*Credit Corp.* (*In re Stanley*), 249 B.R. 509, 513 (W.D. Mo. 2000).

-3-

In South Dakota, one who takes an interest in real property takes with notice of all record instruments in the purchaser's chain of title.  S.D.C.L. § 43-28-15; *DRD Enterprises, LLC v. Flickema*, 791 N.W.2d 180, 183-84 (S.D. 2010).  In this case, Trustee Lovald would thus have constructive notice the property interest being hypothetically encumbered by him under § 544(a)(1) or hypothetically sold to him under § 544(a)(3) is held by Debtor and Tennyson as tenants in common.

Unless a different proportionate interest is indicated in the sale contract, the law presumes tenants in common took equal shares. *Cudmore v. Cudmore*, 311 N.W.2d 47, 49 (S.D. 1981).  This presumption is rebuttable by a showing of unequal contribution; in such a case, the law then presumes the grantees intended to share in proportion to their respective contributions.  *Id*. (citations therein).  The showing of unequal contribution must be made by clear and convincing evidence.  *Id*.

An exception is made if an interest in property held by tenants in common is sold.  While the deed is not conclusive as between and among the co-tenants – whose respective interests will be determined by their respective contributions – as to

> purchasers and creditors, they hold in accordance with the recorded title [because] the parties will be presumed to have put their title on record in accordance with the fact, and those who deal with them have a right to act upon this presumption.

*Id*. (quoting *Stover v. Stover*, 36 A. 921, 922 (Pa. 1897)).  However, an exception to the exception is made when homestead property is involved.  In such a case, state law imposes an additional restriction on a purchaser or encumbrancer.

A conveyance or encumbrance of a homestead by its owner, if married

and both husband and wife are residents of this state, is valid if both husband and wife concur in and sign or execute such conveyance or encumbrance either by joint instrument or by separate instruments.

S.D.C.L. § 43-31-17 (in pertinent part).

III.

Hypothetical *Bona Fide* Purchaser.

Trustee Lovald's status as a hypothetical *bona fide* purchaser is of no avail to him in this case with respect to the homestead held by Debtor and Tennyson as tenants in common. State law precludes a valid sale or encumbrance of a homestead unless both owners have consented thereto.[2] While § 544(a)(3) gives Trustee Lovald the "rights and powers of . . . a bona fide purchaser of real property . . . from the debtor," the statute does not permit Trustee Lovald to also assume Tennyson would consent to any sale of her interest.

> Despite its scope and reach, the strong-arm power "'does not clothe a trustee with [the] protective mantle [of a bona fide purchaser] if there was no way, under the applicable state law, that anyone could attain the status of a bona fide purchaser.'" *Treinish v. Norwest Bank Minnesota,*

---

[2] Had Debtor's tenancy in common been with someone other than his spouse in real property that was not a homestead, the result reached under § 544(a)(3) may have been different. *See, e.g., Wisner v. Pavlin,* 719 N.W.2d 770 (S.D. 2006) (joint tenant's conveyance of interest in homestead was valid where other tenant was not his spouse); *Morris v. Kasparek* (*In re Kasparek*), 426 B.R. 332 (B.A.P. 10th Cir. 2010) (though the debtor may have held certain real property interest in implied trust for his father, under Kansas law, the trustee qualified as a *bona fide* purchaser under § 544(a)(3) and acquired that interest for the bankruptcy estate free of the unrecorded trust interest); *Bakst v. Corzo* (*In re Corzo*), 406 B.R. 154 (Bankr. S.D. Fla. 2008) (using his *bona fide* purchaser status under § 544(a)(3), the chapter 7 trustee could bring into bankruptcy estate the debtor's one-half interest in real property co-owned with his mother, even if the debtor only held bare legal title).

*N.A.* (*In re Periandri*), 266 B.R. 651, 655 (6th Cir. BAP 2001) (quoting *Condren v. Harrison* (*In re Borison*), 226 B.R. 779, 787 (Bankr. S.D.N.Y. 1998)).  . . .  *See also Anderson v. Conine* (*In re Robertson*), 203 F.3d 855, 864 (5th Cir. 2000) ("The trustee, just as a hypothetical purchaser, is amenable to state recording statutes and *other nonbankruptcy laws which would prevent him from properly perfecting [a] transfer from the debtor at the time of the commencement of the case*.  Thus, although section 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, *as well as other state law limitations upon bona fide third party purchaser status*." (citations omitted)).

*Drown v. Wells Fargo Bank, N.A.* (*In re Scott*), 424 B.R. 315, 328-29 (Bankr. S.D. Ohio 2010) (emphasis added); *see Michael v. Martinson (In re Michael)*, 49 F.3d 499, 502 (9th Cir. 1995) (trustee could not use the § 544(a)(3) power to defeat homestead exemption claimed by the debtors post-petition).

In this case, the "other nonbankruptcy law" by which Trustee Lovald is constrained is S.D.C.L. § 43-31-17.  Under that statute, both the husband and wife must sign any document of purchase regarding their homestead for the purchase to be valid.  Consequently, Trustee Lovald cannot use § 544(a)(3) to expand Debtor's interest in Tennyson's home and bring into the bankruptcy estate more than was brought into it under § 541(a)(1).

Section 544(a)(3) provides the trustee with the status of a hypothetical *bona fide* purchaser. . . ; the statute does not assume for the debtor the status of a hypothetical transferor, *i.e.*, a debtor who conveyed interests . . . to a third person as an agent for her spouse, or whose spouse subsequently ratified the transfer.

*Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 402 B.R. 299, 311-312 (Bankr. N.D. Ind. 2009) (discussing hypothetical conveyance of an interest in a

tenancy by the entireties).

Consequently, even when Trustee Lovald's rights and powers under § 544(a)(3) are taken into account, his interest in Tennyson's home is no greater than the interest he was found at trial to have under § 541(a)(1), which the Court determined by placing him in Debtor's shoes and analyzing Debtor's tenancy in common interest under South Dakota law.  As noted above, that law creates a presumption each co-owner holds an equal share, but that presumption is rebuttable by a showing of unequal contribution.  S.D.C.L. § 43-2-17; *Cudmore*, 311 N.W.2d at 49.  The evidence showed all the equity in Tennyson's home belonged to Tennyson.[3] Notwithstanding Trustee Lovald's rights and powers under § 544(a)(3), the bankruptcy estate thus has nothing to gain by a sale.  *Stern v. Molano* (*In re DeVanzo*), 2010 WL 1780038, *4 (Bankr. E.D.N.Y. May 3, 2010) (first factor to consider under § 363(h)(3) is whether the proposed sale creates a benefit to the bankruptcy estate).

Hypothetical Judicial Lien Creditor.

A different result is reached, however, when Trustee Lovald's rights and powers

---

[3] At the trial, the evidence established the equity in the home was $63,071.07, slightly less than the original equity of $73,922.00.  The record at trial also established all the existing equity was the result of Tennyson's contributions, initially from the sale of her prior home and a gift from Debtor, and thereafter from her payments on the first mortgage.  Any post-petition equity that would have been created by paying down the first mortgage was offset, in large part, by the post-petition home equity loan, with which the parties jointly encumbered the property, and to a lesser extent by a slight decrease in the market value of the home.  Thus, on the record presented, Tennyson contributed all the initial equity, and Debtor contributed nothing post-petition to add to or increase the equity.

under § 544(a)(1) are considered.  Under South Dakota law, a judgment lien may attach to real property if there is equity in excess of prior perfected encumbrances and the allowed homestead exemption to support the judgment lien.  S.D.C.L. § 15–16–7; *Pfeiffer v. Bormes* (*In re Bormes*), 14 B.R. 895, 897 (Bankr. D.S.D. 1981); *Brodsky v. Maloney*, 105 N.W.2d 911, 915 (S.D. 1960); *Peter Mintener Lumber Co. v. Janisch*, 181 N.W. 914, 915 (S.D. 1921); *Keim v. Rand*, 158 N.W. 904, 905 (S.D. 1916) (all cited in *In re Hughes*, 244 B.R. 805, 812 n.4 (Bankr. D.S.D. 1999)).

In this case, the Court found there was $63,071.07 in equity in Tennyson's home, subject to Tennyson's homestead exemption.  Unfortunately, the case law cited by the parties and the additional case law surveyed by the Court does not clearly answer the question, given Debtor and Tennyson's tenancy in common, what portion of the $63,071.07 is subject to Trustee Lovald's hypothetical lien under § 544(a)(1)?[4] For now, that question will remain unanswered.  The Court will assume Trustee Lovald's hypothetical judgment lien attached to one-half of the $63,071.07 in equity, or $31,535.54, excluding liquidation costs, the largest sum potentially available to

---

[4] The homestead exemption value limitation in South Dakota was raised from $30,000.00 to $60,000.00 after Debtor filed his bankruptcy petition but before Trustee Lovald brought his § 363(h) action.  While Tennyson is entitled to protect her full homestead exemption against creditors, *Beck v. Lapsley*, 593 N.W.2d 410, 413 (S.D. 1999) (cites therein), the parties did not present any case law or offer any theories regarding the amount of the homestead exemption Tennyson is entitled to claim in this § 363(h) analysis.  The parties also did not discuss the nature of the interest ultimately held by the purchaser when an execution sale on the judgment lien is conducted.  *See, e.g., Murphy v. Connolly*, 140 N.W.2d 394, 399 (S.D. 1966) (when sheriff issues deed following execution sale on a judgment lien on interest in co-tenancy property, the grantee becomes a tenant in common).

Trustee Lovald under his theories.  *Wexler v. Wexler*, 114 N.W.2d 886, 889 (S.D. 1962) (judgment lien for obligation incurred by one co-tenant constitutes a lien only on his interest in the property).[5]

Weighing the benefit and the detriment.

Under § 363(h)(3),[6] Trustee Lovald bears the initial burden to establish the proposed sale does in fact create a benefit to the bankruptcy estate.  *DeVanzo*, 2010 WL 1780038, at *4.  The burden then shifts to Tennyson, as the co-owner, to demonstrate the sale of her interest in the property would result in a detriment to her. *Id*.  When weighing the benefit to the bankruptcy estate against the detriment to co-tenant Tennyson, the Court must give greater weight to economic factors versus non economic factors.  *Id*. at *9.  Factors the Court should consider include reduction of joint debt, the profit the co-owner would receive, the cost of relocating, the co-owners' forced acceptance of her share of the proceeds, the co-owners' respective life expectancies, the co-owners' respective contributions to the cost of the house, the co-owners' prospects for acquiring a new house, the co-owner's special physical or mental handicaps, and the interests of any minor children living in the house.  *Wright v. Wright* (*In re Wright*), 2009 WL 2384189, *4 (Bankr. W.D. Ark. 2009); *DeVanzo,*

---

[5]  Under the precise language of § 544(a)(1), the hypothetical lien that attaches in this case is one for a debt incurred only by Debtor; it is not one for a joint debt incurred by Tennyson and Debtor.

[6]  As noted at trial, the parties have placed only the third requirement of § 363(h) – a weighing of the benefit to the bankruptcy estate and the detriment to Tennyson – at issue.

2010 WL 1780038, at *8 (quoting therein *Community Nat. Bank and Trust Co. of New York v. Persky* (*In re Persky*), 893 F.2d 15, 20-21 (2nd Cir. 1989)).

Trustee Lovald ultimately bears the burden to show the benefit to the bankruptcy estate outweighs the detriment to Tennyson. *DeVanzo,* 2010 WL 1780038, at *4. Though the detriment to the co-owner may be significant, if the benefit to the bankruptcy estate outweighs that detriment, then a sale of the whole property may still be approved. *Id.* at *5. In the end, the Court – in its discretion – must make an equitable decision based on the facts presented. *Id.*

In this case, there was no evidence any joint debt – other than the joint voluntary encumbrances against it – would be reduced by a forced sale of Tennyson's home. The profit Tennyson would recover from the bankruptcy estate would not be sufficient for her to purchase a comparable home. Tennyson would incur relocation costs. The record did not demonstrate Tennyson has the financial wherewithal to exercise her right of first refusal. 11 U.S.C. § 363(j); *Armstrong v. Trout* (*In re Trout*), 146 B.R. 823, 830 (Bankr. D.N.D. 1992). Most important, all the equity in the home is Tennyson's.[7] Further, there was no evidence to establish the dividend that might

---

[7] Concomitantly, were a sale under § 363(h) ordered, the Court notes, without deciding, Tennyson might obtain a claim against the bankruptcy estate because she alone contributed any equity realized upon the sale. *See* S.D.C.L. § 21-45-34, *Sprowls v. Sprowls*, 147 N.W. 645 (S.D. 1914) ("according to the justice of the case[,]" a co-tenant whose undivided interest was sold on a judgment may be entitled to be subrogated to the creditor's rights against the other co-tenant's interest); *Johnson v. Hendrickson*, 24 N.W.2d 914 (S.D. 1946) (if co-tenancy property is partitioned on which one co-tenant has a homestead, "the value of the homestead and improvements, distinct from the land, would be secured to the party at whose expense

be realized for Debtor's unsecured creditors should a forced sale be ordered under § 363(h). Proofs of claim have not yet been requested, and neither party provided evidence regarding any other assets, such as Debtor's significant rental properties, that might be available for liquidation and distribution.

As for non economic factors, those, too, weigh in Tennyson's favor.[8]  Being displaced from her home would be financially difficult and more than inconvenient for her.  Her mental health counselor testified it would impose an emotional hardship on Tennyson.

Based on the record before it, the Court concludes the benefit to the bankruptcy estate of the sale does not outweigh the detriment to Tennyson.  Trustee Lovald's motion to sell will therefore be denied.  Tennyson's counterclaims will be dismissed as moot.

Dated:  April 29, 2011.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

and labor they had been made.").

[8]    While the Court noted at trial neither Tennyson nor Debtor were "outstandingly" credible, Tennyson's testimony and her mental health counselor's testimony regarding the non economic factors were uncontroverted.

-11-